42 So.3d 33 (2010)
Kirk Vincent MAYERS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2008-KA-01722-COA.
Court of Appeals of Mississippi.
February 23, 2010.
Rehearing Denied June 22, 2010.
Certiorari Denied August 8, 2010.
*36 George T. Holmes, Jackson, attorney for appellant.
Office of the Attorney General by Laura Hogan Tedder, attorney for appellee.
Before LEE, P.J., CARLTON and MAXWELL, JJ.
LEE, P.J., for the Court:

PROCEDURAL HISTORY
¶ 1. Kirk Vincent Mayers was convicted in the Circuit Court of Rankin County of Counts I and II, aggravated assault on law enforcement officers; Count III, possession of a stolen firearm; and Count IV, possession of a firearm by a convicted felon. Mayers was sentenced to thirty years each for Counts I and II, five years for Count III, and three years for Count IV. Mayers was sentenced to two additional ten-year terms for the use of a firearm during the commission of a felony. All sentences, totaling eighty-eight years, were ordered to run consecutively in the custody of the Mississippi Department of Corrections without eligibility for parole or probation. Mayers filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied by the trial court.
¶ 2. Mayers now appeals his convictions and sentences, asserting the following issues: (1) the indictment charged simple rather than aggravated assault; (2) the State failed to prove that he knowingly assaulted law enforcement officers; (3) the State failed to prove that he knowingly possessed a stolen firearm; (4) the trial court erroneously refused a self-defense instruction; (5) he was entitled to a cautionary *37 instruction concerning his prior convictions; (6) Juror 18 should have been stricken for cause; (7) the State should have been required to stipulate to his prior convictions under Count IV; (8) the trial court allowed improper opinion evidence; and (9) his sentence is illegal. Finding that a portion of Mayers's sentence was in error, we remand this case for resentencing. Accordingly, we affirm in part and vacate and remand in part.

FACTS
¶ 3. Upon being questioned by an investigator with the Simpson County Sheriff's Department, Jonathan Shelly confessed to stealing several items, including a television and firearms. Shelly told authorities that he had traded the stolen items for drugs at the Crestview Apartment complex in Pearl. On the way to the apartment complex, Shelly pointed out a car and stated that the stolen items would be found in the vehicle. An officer with the Pearl Police Department was called to stop and search the car. Stolen goods were found in the car.
¶ 4. Warrants were obtained for the two apartments where Shelly allegedly traded the stolen items for drugs. The apartment doors were adjacent to each other. Two S.W.A.T. teams were assembled to execute the warrants. The S.W.A.T. teams knocked, announced their presence, and made forceful entry into the two apartments. The first apartment was secured quickly. Upon opening the door of the second apartment, gunshots came from inside. Jake Windham and Philip Arrant, officers with the Pearl Police Department and members of the Pearl S.W.A.T. team, were injured by the gunshots. Officer Windham was shot in the left knee, and Officer Arrant was shot in the right hand. Mayers was found inside lying on the kitchen floor and, subsequently, was arrested. A .22-caliber pistol, which matched the description of the stolen weapon, was found on the floor near Mayers.

DISCUSSION

I. COUNTS I AND II OF THE INDICTMENT
¶ 5. Mayers argues that his convictions under Counts I and II should be reversed and remanded or, in the alternative, that he should be resentenced on the lesser charge of simple assault on law enforcement officers because the indictment did not specifically state that Mayers used a "deadly weapon." The issue of whether an indictment is fatally defective is a question of law, which is reviewed de novo. Qualls v. State, 947 So.2d 365, 369 (¶ 9) (Miss.Ct.App.2007).
¶ 6. Count I of the indictment states:
KIRK VINCENT MAYERS ... did unlawfully, feloniously, purposely and knowingly, cause or attempt to cause bodily injury to Officer Jake Windham, a law enforcement officer with the Pearl Police Department, by shooting the officer in the leg with a gun, knowing the officer was acting within the course and scope of his official duties in violation of Mississippi Code Annotated § 97-3-7....
(Emphasis added). Count II of the indictment states:
And, based upon a series of acts connected together and constituting parts of a common scheme and plan, KIRK VINCENT MAYERS ... did unlawfully, feloniously, purposely and knowingly, cause or attempt to cause bodily injury to Officer Phillip [sic] Arrant, a law enforcement officer with the Pearl Police Department, by shooting at the officer with a gun, knowing the officer was acting within the course and scope of his *38 official duties in violation of Mississippi Code Annotated § 97-3-7. ...
(Emphasis added). Mayers argues that the indictment is unclear because the word "gun" does not necessarily refer to a "handgun." Mayers argues that a "gun" could refer to a paint gun, staple gun, toy gun, or grease gun.
¶ 7. Uniform Rule of Circuit and County Court 7.06 states the requirements for the substance of an indictment as follows:
The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. ...
¶ 8. The heading of Mayers's indictment states that he is being charged with aggravated assault on a law enforcement officer. Counts I and II state the statute under which he was charged. Count I states that Mayers shot Officer Windham "in the leg with a gun," and Count II states that Mayers caused or attempted to cause Officer Arrant bodily injury "by shooting at the officer with a gun." As Rule 7.06 states: "Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them." We find that it is clear from the indictment that Mayers injured the two police officers with a deadly weapon. Therefore, we find that this issue is without merit.

II. KNOWING ASSAULT
¶ 9. Mayers argues that the State failed to prove an essential element of aggravated assault on a law enforcement officer because he did not knowingly shoot the law enforcement officers. Mayers asserts that he thought someone was breaking into the apartment and fired a gun toward the door in self-defense.
¶ 10. Mississippi Code Annotated section 97-3-7(2) (Supp.2009) states, in part, that:
A person is guilty of aggravated assault if he ... (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm. ...
The statute goes on to provide for an enhanced penalty if aggravated assault is committed upon a law enforcement officer who is acting within the scope of his duty. Id.
¶ 11. In Dotson v. State, 358 So.2d 1321, 1322 (Miss.1978), the supreme court addressed the issue of whether it is necessary for the accused to have knowledge that the individual assaulted was a police officer in order to sustain a conviction for simple assault on a law enforcement officer. In Dotson, two police officers had a search warrant to search Frederick Dotson's vehicle. Id. at 1321. One of the officers approached Dotson's car while it was stopped at a red light; walked up to Dotson's open window; and shouted, "Dotson, freeze police." Id. The officer was wearing nothing that would identify him as a police officer, and he was driving an unmarked car. Id. The officer testified that Dotson pointed a gun at him and drove off at a high rate of speed. Id. Dotson was found guilty of simple assault on a law enforcement officer. Id. However, his conviction was reversed on appeal and remanded for the jury to determine whether he knew that the man who approached his vehicle was a police officer. Id. at 1323. In its opinion, the supreme court stated:

*39 When there is no doubt of the defendant's unlawful intention, knowledge of the official capacity of the victim is invariably unnecessary; the assailant takes his victim as he finds him. But if the defendant asserts a lack of intention or wilfulness based upon ignorance of the identity of the victim and ignorance of the victim's official privilege to interfere with the defendant's person or freedom of movement, the jury must be allowed to consider the defendant's evidence tending to show that he was ignorant of the official capacity of the victim.
Id.
¶ 12. Mayers argues that he could not have known the person he shot was a law enforcement officer because he never saw him. Mayers testified that he and his girlfriend, Serfina Martin, were asleep and did not hear the officers announce their presence. He testified that he kept a pistol with him because his girlfriend's ex-boyfriend was getting out of jail soon and had made threats against Mayers. At approximately 11:51 p.m., he heard a loud noise at the door. He woke up and retrieved the gun. As he approached the front door, the door opened from the outside, and Mayers opened fire.
¶ 13. We find that the question of whether Mayers committed a knowing assault was for the jury to decide, and the jury was properly instructed on this issue. Jury instruction number seven stated that in order to find Mayers guilty, the jury must find from the evidence, beyond a reasonable doubt that:
1. [Mayers], on or about May 5, 2006, in Rankin County, Mississippi,
2. did unlawfully, purposely and knowingly cause bodily injury to Jake Windham,
3. by shooting Jake Windham in the leg with a deadly weapon, to-wit: a gun,
4. At a time when [Mayers] knew, or reasonably should have known, that the said Jake Windham was acting within the course and scope of his duties as a law enforcement officer for the Pearl Police Department. ...
Jury instruction number eight was identical except Officer Arrant's name was substituted for Officer Windham's name.
¶ 14. Archie Bennett, a narcotics detective with the Pearl Police Department, was present on the day of the shootings. Detective Bennett testified that the officers knocked on each apartment door, and the entire S.W.A.T. team repeatedly yelled: "Pearl Police. Search warrant. Open the door." Officer Mark Mooney with the Pearl Police Department also testified that he was present at the scene. Officer Mooney was in charge of breaching the doorway of the first apartment. He testified that the ten-member team yelled: "Pearl police. Search warrant. Open the door." He testified that the first apartment was secured by half of the team before the other half breached the door of the second apartment. Officer Jerry Adair testified that during the time that he and the other officers were knocking and announcing their presence, he saw people coming out of other apartments to ask what was happening.
¶ 15. Investigator Bernard Gunter, captain of investigations with the Simpson County Sheriff's Department, testified that he rode to the scene of the search and was stationed outside the vehicle, which was approximately seventy-five yards from the doorway of the apartment. He testified that he could clearly hear the S.W.A.T. team announce "Pearl Police Department" several times from his location.
¶ 16. Officer Arrant testified that all members of the team were announcing their presence as loudly as they could. Officer Arrant testified that Officer Windham *40 rammed the door four or five times with a ramming device, but it did not open. Officer Windham then tried to ram the door with his shoulder several times before trying the ramming device again. He hit the door with the ramming device one or two more times, and the door opened. Sergeant Timothy Sarret was present and testified that the team announced their presence by knocking on the door and repeatedly yelling: "Police. Search warrant." Sergeant Sarret went on to testify that as the officers tried to ram the door open, he "could actually see a figure through ... the peephole. ..." He testified that as shots came from inside the doorway, "[t]he silhouette [was] actually right in front of me[,] and [it was] actually starting to move to my left."
¶ 17. Officer Arrant testified that he and the other members of the team were wearing tactical vests with the word "Police" clearly displayed on the front, back, and sleeves. The officer closest to the door carried a shield which read "Pearl Police Department" on the front. Sergeant Farris Thompson, who was the S.W.A.T. team leader, testified that of the ten men present, eight were wearing S.W.A.T. flight suits, tactical vests, and helmets; and two were wearing regular Pearl Police Department uniforms.
¶ 18. When reviewing the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Viewing the evidence in the light most favorable to the State, we find that the jury was presented with sufficient evidence to determine that Mayers knew or should have known that the men outside his door were police officers. Therefore, we find that this issue is without merit.

III. SCIENTER
¶ 19. Mayers argues that the State failed to prove that he knew the firearm he used in the shootings was stolen; therefore, he argues that this Court should reverse and render the jury's verdict as to Count III.
¶ 20. Mississippi Code Annotated section 97-37-35(1) (Rev.2006) states: "It is unlawful for any person knowingly or intentionally to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm or attempt to possess, receive, retain, acquire or obtain possession or dispose of a stolen firearm." "Guilty knowledge must be both alleged and proved by the State for a conviction to stand." Long v. State, 933 So.2d 1056, 1058 (¶ 6) (Miss.Ct.App.2006). "For the State to prove guilty knowledge, it must prove that [the defendant] received the property under circumstances that would lead a reasonable person to believe that it was stolen." Id. (citing Ellett v. State, 364 So.2d 669, 670 (Miss.1978)).
¶ 21. The jury heard the informant, Shelly, testify that he gave Mayers a .22-caliber pistol in exchange for crack cocaine. Shelly testified that Mayers knew the pistol was stolen, and Mayers was trying to sell it quickly because it was a stolen gun. Even though Mayers did not witness the theft of the gun, we find that the circumstances under which the gun was obtained would lead a reasonable juror to believe that it was stolen. Therefore, we find that this issue is without merit.

IV. SELF-DEFENSE JURY INSTRUCTION
¶ 22. Mayers next argues that it was error for the trial court to refuse his *41 proposed jury instruction on self-defense as a defense to the charge of being a felon in possession of a firearm.
¶ 23. "When a trial court fails to give a jury instruction, this Court must review the jury instructions as a whole to determine whether reversible error was committed." Lenard v. State, 828 So.2d 232, 236 (¶ 21) (Miss.Ct.App.2002). "[T]he court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Id. (quoting Heidel v. State, 587 So.2d 835, 842 (Miss. 1991)).
¶ 24. Proposed jury instruction D-11 states:
If you find from the evidence in this case beyond a reasonable doubt that:
1. The defendant, Kirk Mayers, has been previously convicted of a felony; and
2. The defendant had in his possession a pistol;
3. Not in necessary self-defense;
then you shall find the defendant guilty of possession of a firearm by a convicted felon.
¶ 25. This Court has held that "self-defense is not a viable defense to possession of a firearm by a convicted felon. Possession of a firearm by a convicted felon is a criminal act void of a third party to defend against." Williams v. State, 953 So.2d 260, 263 (¶ 8) (Miss.Ct. App.2006). However, "necessity is a valid defense to possession of a firearm by a convicted felon." Id. at (¶ 9). "In order to be entitled to a defense of necessity, the defendant must prove the following: (1) the act charged was done to prevent a significant evil[;] (2) there was no adequate alternative[;] and (3) the harm caused was not disproportionate to the harm avoided." Id. at 263-64 (¶ 9).
¶ 26. We find that the jury instruction, as requested, incorrectly states the law and was properly refused. We also find that if the requested instruction had been a defense of necessity, the instruction would have been without foundation in the evidence. Therefore, we find that this issue is without merit.

V. CAUTIONARY INSTRUCTION
¶ 27. Mayers argues that the trial court erred in failing to grant his requested cautionary jury instruction regarding possession of a firearm by a convicted felon. Proposed jury instruction D-8 stated:
The Court instructs the [j]ury that any prior convictions of Kirk Mayers are not evidence that the defendant committed the crime alleged in the indictment. A prior conviction is merely one element of the crime charged in the indictment. You only use that evidence, if any, in determining whether the [S]tate has met their burden of proof that Kirk Mayers is a convicted felon. You should not consider this element as evidence that Kirk Mayers possessed the firearm in question.
¶ 28. The trial court possesses considerable discretion in determining whether to grant or deny jury instructions. Bickham v. Grant, 861 So.2d 299, 301 (¶ 8) (Miss. 2003). The trial court refused this instruction, as written, on the grounds that it was confusing and not a correct statement of the law. We find that the trial judge did not abuse his discretion in making this determination. Instead of simply being a cautionary instruction, instruction D-8 goes on to state that the jury "should not consider this element as evidence that Kirk Mayers possessed the firearm in question." Mayers did not deny possession of the firearm; therefore, this was not *42 an issue for the jury to decide. The supreme court has held that "it would be error to grant an instruction which is likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence." Id. (quoting Southland Enterprises, Inc. v. Newton County, 838 So.2d 286, 289 (¶ 9) (Miss.2003)). Since this instruction would have misled or confused the jury, we find that Mayers's argument on appeal is without merit.

VI. FOR CAUSE DETERMINATION
¶ 29. Mayers argues that Juror 18, Charles Tucker, should have been stricken for cause because he said he had work-related matters which would distract him from focusing on Mayers's case. Mayers exhausted all of his peremptory challenges, and Tucker was placed on the jury.
¶ 30. "Excusing jurors for cause is in the complete discretion of the trial court." Berry v. State, 703 So.2d 269, 292 (¶ 85) (Miss.1997). Other than stating that he would have a difficult time paying attention because of work-related matters, Tucker did not otherwise indicate any bias or prejudice or any other reason why he should not be on the jury. When Mayers's attorney brought Tucker's statement to the court's attention, the trial judge replied that he had asked the potential jurors the same questions the previous day when the grand jury convened, and Tucker did not respond. The trial judge stated: "He should have told me. He's going to have to endure it. He had every opportunity to tell me that Monday."
¶ 31. A presumption exists that the trial court impaneled a fair and impartial jury. Ross v. State, 954 So.2d 968, 988 (¶ 31) (Miss.2007). "To overcome this presumption, a party must present evidence indicating that the jury was not fair and impartial and show that prejudice resulted from the circuit court's handling of the voir dire." Id. Mayers has not argued that any prejudice resulted from the impaneling of Juror 18. Therefore, we find that this issue is without merit.

VII. PRIOR CONVICTIONS
¶ 32. Mayers argues that any probative value of introducing his prior convictions was outweighed by the prejudice it caused. Mayers offered to stipulate to the existence of his prior felony convictions in order to avoid potential prejudice by the jury.
¶ 33. Mayers was previously convicted of house burglary and auto burglary. At the time of the shootings, Mayers was on probation with thirteen years to serve if his probation was revoked. The State admitted that it would have accepted the stipulation if it was only trying to prove that Mayers was a felon in possession of a firearm. However, the State argues that the introduction of the prior convictions was necessary to show motive. The State argues that Mayers shot at the officers because he knew there were stolen goods inside the apartment, and if the police entered, his probation would be revoked.
¶ 34. Mississippi Rule of Evidence 404(b) states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
¶ 35. The trial court found it necessary to introduce Mayers's prior judgment of conviction and sentencing order because it was part of the State's theory of the case to show motive for the aggravated assault *43 on the law enforcement officers. The documents showed the terms of Mayers's sentence and the reasons why his probation could be revoked. The trial court determined that the probative value of the prior convictions outweighed any prejudicial effect.
¶ 36. In Sawyer v. State, 2 So.3d 655, 656 (¶ 1) (Miss.Ct.App.2008), Charlie Sawyer was charged with armed robbery and possession of a firearm by a convicted felon. The State sought to introduce two prior convictions of armed robbery to establish that Sawyer was a felon. Id. at 658 (¶ 13). Sawyer offered to stipulate his status as a convicted felon. Id. The trial court denied Sawyer's request and allowed evidence of the prior convictions to be introduced into evidence. Id. On appeal, this Court reversed and remanded, finding that "the probative value of Sawyer's prior armed robbery convictions [was] substantially outweighed by the danger of unfair prejudice because the jury would use Sawyer's prior convictions as evidence in considering [the charge of armed robbery]." Id. at 661 (¶ 28). We found that the facts of Sawyer were identical to those in Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997), where the United States Supreme Court found that the risk of prejudice was too great when "the prior conviction is for an offense likely to support conviction on some improper ground. ..." Id. at 659 (¶ 20) (quoting Old Chief, 519 U.S. at 191, 117 S.Ct. 644). This Court also noted that a stipulation would have been sufficient because the State did not offer the prior convictions as an exception under Rule 404(b). Id. at 660 (¶ 27).
¶ 37. We review the trial court's "rulings on the admission or exclusion of evidence for abuse of discretion." Williams v. State, 960 So.2d 506, 510 (¶ 11) (Miss.Ct. App.2006). We cannot find that the trial court abused its discretion in allowing evidence of the prior convictions. First, this case is distinguishable from Sawyer because the prior felonies were introduced to show the State's theory of motive. Second, the introduction of the sentencing report was necessary to show the terms of Mayers's probation. Finally, we find that the introduction of Mayers's prior convictions was not unduly prejudicial because the prior convictions were not being used to show Mayers's character or that he acted in conformity with a previous crime, as the charges of burglary are distinct from the charges of aggravated assault. This issue is without merit.

VIII. OPINION EVIDENCE
¶ 38. Mayers argues that Brian Ellis, an investigator with the Pearl Police Department, was allowed to give improper opinion evidence regarding the trajectory of the bullets fired by Mayers's gun.
¶ 39. Ellis was not qualified by the trial court as an expert. Ellis testified as to what he observed when he investigated the crime scene. Ellis testified that he found four shell casings in the living room. He found a bullet fragment lodged in an entertainment center in the apartment directly across from the apartment Mayers occupied. Ellis testified that the doors of the two apartments were directly across from one another. Ellis identified a picture of the apartment door with a bullet hole in it.
¶ 40. Mississippi Rule of Evidence 701 states that a lay person's testimony is limited to "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to the clear understanding of the testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."
*44 ¶ 41. Mayers argues that Ellis's testimony as to the path of the bullets was an area requiring expert testimony because ballistics investigation is within the scope of Mississippi Rule of Evidence 702. Ellis's testimony was nothing more than his opinion based on his personal observations. We find that Ellis's testimony was not intended to prove any ballistic evidence since Mayers admitted to shooting the officers. Therefore, we find that this issue is without merit.

IX. LEGALITY OF SENTENCE
¶ 42. Mayers argues that his sentence was illegal for five reasons that we will address separately. Finding that Mayers's argument regarding the application of Mississippi Code Annotated section 97-37-37(2) (Supp.2009) has merit, we will discuss it first. All other issues raised are without merit.

A. Ex Post Facto Application of Section 97-37-37(2)
¶ 43. Mayers argues that his sentence violated the prohibition against ex post facto application of criminal penalties. Mayers notes that Mississippi Code Annotated section 97-37-37(2) became effective on July 1, 2007, and the crime at issue was committed on May 5, 2006.
¶ 44. Mayers was sentenced to thirty years on each count of aggravated assault. The trial court then used section 97-37-37(2) to add an additional ten years to each of the aggravated assault sentences. Section 97-37-37(2) states:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any convicted felon who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of ten (10) years, to run consecutively, not concurrently, which sentence shall not be reduced or suspended.
¶ 45. We find that Mayers failed to raise a constitutional challenge at trial and, therefore, waived this issue. Rogers v. State, 928 So.2d 831, 834 (¶ 8) (Miss.2006). Mayers's attorney objected to the application of section 97-37-37 on the basis of notice, but no argument is made regarding its ex post facto application. The supreme court "has consistently held that constitutional questions not raised at the lower court will not be reviewed on appeal." Id. Therefore, we find that Mayers is procedurally barred from raising this issue on appeal. Porter v. State, 749 So.2d 250, 259 (¶ 34) (Miss.Ct.App.1999).
¶ 46. Notwithstanding the procedural bar, we may address this issue under the plain-error doctrine because it affects Mayers's substantive rights. Id. at 260-61 (¶ 36). "Article 3, section 16 of the Mississippi Constitution of 1890 prohibits those laws which retroactively change the definition of crimes or increase the punishment for criminal offenses." Id. at 260 (¶ 35). We agree with Mayers that his substantive rights were violated by the ex post facto application of section 97-37-37(2). We find this case analogous to Porter. In Porter, Robert Porter, Jr., was convicted of felony driving under the influence (DUI). Porter, 749 So.2d at 252 (¶ 2). Porter received an enhanced penalty based on the fact that he had two or more DUI convictions within the past ten years. Id. at 260 (¶ 34). However, this Court found the statute that was in effect at the time of the incident only allowed the enhanced penalty to be applied if two or more DUI offenses occurred within five years of the current offense. Id. Therefore, Porter's offense was a misdemeanor rather than a felony. Id. at (¶ 35). This Court reversed the case based on the plain-error doctrine *45 and remanded for resentencing pursuant to the statute that was in effect at the time of Porter's arrest. Id. at 261 (¶ 39).
¶ 47. We find that the error in Mayers's sentencing constituted plain error because section 97-37-37(2) did not become effective until after the crime occurred. Instead, Mississippi Code Annotated section 97-37-37(1) (Supp.2009), which first became effective on July 1, 2004, was in effect at the time of the crime and was applicable to Mayers's sentencing. Section 97-37-37(1) states:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.
Therefore, because the statute under which Mayers was sentenced was not in effect at the time his crime was committed, we vacate the two ten-year sentences ordered as sentence enhancements to the sentences for Counts I and II, and we remand this case for the limited purpose of resentencing on the sentence enhancements in Counts I and II.

B. Sentence Enhancement
¶ 48. Mayers argues that the statute under which his sentences for aggravated assault were enhanced does not apply. We will not address this issue as we have found that section 97-37-37(2) was not applicable to Mayers's sentence. However, to the extent that Mayers argues that the trial court erred in applying the sentence enhancement more than once, we find that there is no prohibition on multiple applications of this statute. This issue is without merit.

C. Double Jeopardy
¶ 49. Mayers next argues that the application of Mississippi Code Annotated section 97-37-37 constitutes double jeopardy because it requires proof of the same elements as the underlying crimes. See Houston v. State, 887 So.2d 808, 814 (¶ 23) (Miss.Ct.App.2004) ("Double jeopardy allows a defendant to be protected against ... multiple punishments for the same offense."). Mayers argues that the "use" of a firearm element was contained in the aggravated assault offenses; thus, no additional proof was necessary under section 97-37-37. We will address this issue even though subsection (2) was incorrectly applied because "use" or "display" of a firearm is required by both subsections (1) and (2).
¶ 50. Mayers admits that sentence enhancements do not typically trigger double jeopardy violations; however, Mayers argues that it is not clear whether the statute creates a new offense or operates as an enhancement. We find that this argument is procedurally barred because it was not raised at trial. Notwithstanding the procedural bar, we find that this argument is without merit. Section 97-37-37, which is entitled: "Enhanced penalty for use of firearm during commission of felony," is clearly a sentence enhancement and does not set out separate elements of the underlying felony. We find that this issue is without merit.

D. Apprendi

¶ 51. Next, Mayers argues that the sentence enhancement was not in the indictment and that the jury did not make findings as required by Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Apprendi states that "[o]ther than the fact of a prior conviction, *46 any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. Mayers argues that his case is analogous to Brown v. State, 995 So.2d 698 (Miss.2008), which was decided after he was convicted and sentenced. In Brown, Jureka Brown's sentence for the sale of cocaine was doubled because the offense occurred within 1,500 feet of a church. Id. at 701 (¶ 6). On appeal, the supreme court vacated the sentence enhancement because the trial judge, rather than the jury, decided whether Brown was within 1,500 feet of a church. Id. at 704 (¶ 27). Citing Apprendi, the supreme court found that "the Sixth Amendment requires that the issue of Brown's sentence enhancement be submitted to a jury." Id. at 705 (¶ 29). The supreme court noted that the testimony was unclear on Brown's distance from the church or whether the building was even an operating church. Id. at 704 (¶ 26).
¶ 52. Despite making this argument, Mayers does not cite to any specific element of the statute that was not decided by the jury. Brown is distinguishable from the case at hand because the jury, rather than the trial judge, decided all the elements of the sentence enhancement. The jury found beyond a reasonable doubt that Mayers was a convicted felon and that Mayers used a firearm during the commission of a felony. Each factor of section 97-37-37 is contained in the indictment and was submitted to the jury. No other factors were required to be determined by section 97-37-37 that had not already been decided by the jury. Therefore, we find that this issue is without merit.

E. Proportionality of Sentence to Crime
¶ 53. Finally, Mayers argues that his sentence was unconstitutionally disproportionate to the crimes charged. As a general rule, a sentence that does not exceed the maximum period allowed by statute will not be disturbed on appeal. Wallace v. State, 607 So.2d 1184, 1188 (Miss.1992). However, a sentence that is "grossly disproportionate" to the crime committed is subject to attack on Eighth Amendment grounds. Id.
¶ 54. "[A]s the Mississippi Supreme Court has said on countless occasions, `[s]o long as the sentence imposed is within the statutory limits, sentencing is generally a matter of trial court discretion.'" Williams v. State, 784 So.2d 230, 237 (¶ 19) (Miss.Ct.App.2000) (quoting Green v. State, 631 So.2d 167, 176 (Miss.1994)). The gravity of the offense in this case was very high, and we find that the sentence imposed was not unduly harsh. Mayers states that "the gravity of the offense was moderately high, but the sentence was extreme and greater than sentences imposed in the same jurisdiction and others." However, Mayers does not cite to any case law to provide examples of similarly-situated defendants who received lesser sentences.
¶ 55. Since we find that a threshold comparison reveals that Mayers's sentence was not grossly disproportionate, no constitutional analysis is necessary under Hoops v. State, 681 So.2d 521, 538 (Miss. 1996). See also Solem v. Helm, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (overruled in part by Harmelin v. Michigan, 501 U.S. 957, 965-66, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). Therefore, we find that this issue is without merit.

CONCLUSION
¶ 56. We find that Mayers was erroneously sentenced pursuant to section 97-37-37(2), which was not in effect at the time his crime was committed. Mayers should have been sentenced pursuant to section 97-37-37(1), which became effective *47 on July 1, 2004. Section 97-37-37(1) requires a sentence enhancement of five years for each count of aggravated assault because Mayers used a firearm during the commission of the felonies. The sentence enhancement under Counts I and II is vacated, and this case is remanded for resentencing pursuant to the law in effect at the time of Mayers's crime. We find that all other issues raised in this appeal are without merit.
¶ 57. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT UPON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF THIRTY YEARS; COUNT II, AGGRAVATED ASSAULT UPON A LAW ENFORCEMENT OFFICER, AND SENTENCE OF THIRTY YEARS; COUNT III, POSSESSION OF A STOLEN FIREARM, AND SENTENCE OF FIVE YEARS; AND COUNT IV, POSSESSION OF A FIREARM BY A CONVICTED FELON, AND SENTENCE OF THREE YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION, IS AFFIRMED. THE SENTENCE ENHANCEMENTS FOR COUNTS I AND II ARE VACATED, AND THIS CASE IS REMANDED FOR THE LIMITED PURPOSE OF RESENTENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO RANKIN COUNTY.
KING, C.J., MYERS, P.J., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES AND ROBERTS, JJ. IRVING, J., NOT PARTICIPATING.
MAXWELL, J., specially concurring:
¶ 58. I agree with the result reached by the majority. However, I write separately to address a matter that has not yet been confronted by Mississippi's appellate courts  application of the firearm penalties set forth in Mississippi Code Annotated section 97-37-37 (Supp.2009). Section 97-37-37(1) provides:
Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.
If the firearm is used or displayed by a previously convicted felon, a mandatory ten-year consecutive sentence applies. See Miss.Code Ann. § 97-37-37(2).
¶ 59. In Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court instructed: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In the case before us, the circuit judge increased Mayers's sentence "beyond the prescribed statutory maximum" of thirty years' imprisonment on each of the two aggravated assault counts. Thus, Apprendi's dictates were clearly triggered.
¶ 60. I agree with the majority that by returning guilty verdicts on the substantive aggravated-assault and firearm-possession *48 counts, the jury made the necessary factual findings that Mayers used or displayed a firearm in the commission of another crime as required by section 97-37-37.
¶ 61. Though Mississippi courts have not addressed this specific issue, Florida courts have held where an indictment alleges "the crime was committed with a firearm and the jury finds that the defendant committed the crime as charged, the jury has necessarily found use of a firearm." Hunter v. State, 828 So.2d 1038, 1039 (Fla.Dist.Ct.App.2002) (citing State v. Hargrove, 694 So.2d 729, 731 (Fla.1997), abrogated on other grounds by Galindez v. State, 955 So.2d 517, 522-23 (Fla.2007)). Other states have similarly reasoned that such findings satisfy the Apprendi requirement that the element of use of a firearm was charged, submitted to a jury, and proved beyond a reasonable doubt. See People v. Rhodes, 281 A.D.2d 225, 227-28, 723 N.Y.S.2d 2 (N.Y.App.Div.2001); Clark v. State, 621 N.W.2d 576, 581-82 (N.D. 2001); Parker v. State, 754 N.E.2d 614, 618-19 (Ind.Ct.App.2001); State v. McLean, 344 N.J.Super. 61, 779 A.2d 1128, 1129, 1134-35 (2001); State v. Walker, 789 So.2d 86, 90-91 (La.Ct.App.2001).
¶ 62. However, situations arise where firearms are employed during the commission of a felony, but their use or display are not required elements of the charged predicate offense. For example, if a firearm is employed during a sexual battery, simply proving each element of the sexual-battery charge would not cover the necessary elements of use or display of a firearm. And in such instances, unless the circuit judge sentences the defendant well below the statutory maximum, Apprendi would prohibit the additional five and ten-year sentences provided in section 97-37-37(1) and (2).
¶ 63. In situations where the predicate offense does not contain the elements of use or display of a firearm, there are essentially two ways to trigger the enhanced penalties in 97-37-37(1) and (2). The first method is for prosecutors to charge section 97-37-37 in the indictment. Indeed, Title 18, Section 924(c)(1)(A) of the United States Code (Supp.2009)  the federal firearm counterpart, which Mississippi's enhanced penalties in section 97-37-37 appear to have been modeled after  has since its inception been charged and presented to the jury in connection with the underlying predicate felony offense. This approach clearly complies with Apprendi and creates another arrow in the prosecutor's quiver to fight felony crimes during which firearms are used or displayed. This method also provides notice to criminal defendants that they will be imprisoned for an additional five or ten years if they proceed to trial and are convicted of using or displaying a firearm.
¶ 64. A second approach entails submission of a special verdict form to the jury that requires deliberation and jury findings beyond a reasonable doubt on the separate elements of the firearm enhancement. While this second method has been approved by the Florida Supreme Court, see State v. Iseley, 944 So.2d 227, 230-31 (Fla.2006), there are questions whether it meets the notice requirements set forth in Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (holding that the Due Process Clause and Sixth Amendment require that any fact other than a prior conviction that increases the maximum penalty for a crime must be charged in the indictment).
¶ 65. In my opinion, the first method of simply charging section 97-37-37 in the indictment would create the least confusion among the bench and bar and would meet constitutional notice and due process *49 requirements as well as the dictates of Apprendi.
BARNES AND ROBERTS, JJ., JOIN THIS OPINION.